MARY J. SHERWIN, Appellant, *v.* ELLA JONAS, Respondent.*

Supreme Court, Appellate Term, Second Department, February 1, 1934.

* Revg. 149 Misc. 481.

*Borowsky & Burrows* [*Benjamin Burrows* on the brief], for the appellant.

*William Tancer*, for the respondent.

PER CURIAM. Order unanimously reversed upon the law, with ten dollars costs and taxable disbursements to appellant, and plaintiff's motion granted to the extent of striking out the defense pleaded in the answer, and in all other respects denied.

Plaintiff sued on a written guaranty of a promissory note. The note was secured by mortgages, which were not made at the time the note was executed. They had been in existence before the note was made and were then held by the company, which became the payee, as collateral security for other indebtedness due to it by the maker of the note. When the note was made, it was agreed that the mortgages, so far as they were in excess of the amount for which they were already held as security, should be held as security for the payment of the note. The consideration for the note was the satisfaction of a mortgage held by the payee upon the property owned by the maker. The note was given for the balance due on that mortgage. There is nothing in the record to suggest that the mortgages now held as security for the note had any relation to the mortgage which was satisfied or to the debt secured thereby.

The complaint is in the more or less usual form in such an action. The answer, besides containing certain denials, sets up a defense, which alleges that the guaranty in suit arose out of and in connection with the execution and delivery of the promissory note, the payment of which was guaranteed by the defendant. It is further alleged that the note was secured in whole by collateral consisting of several mortgages on real property situated in the county of Kings, and that such collateral is of a value in excess of the indebtedness represented by the note, and will, in the course of liquidation before the emergency act constituting chapter 793 of the Laws of 1933) expires, be sufficient to pay the obligation in full, but that at the present time the collateral cannot be readily converted into cash because of the emergency existing in real estate. The defense also alleges that the guaranty sued upon comes within the letter and spirit of the chapter mentioned.

Plaintiff moved to strike out the defense under rule 109 of the Rules of Civil Practice, on the ground that it was insufficient in law, and also for summary judgment under rule 113. Summary judgment to plaintiff was properly denied because the papers submitted upon the motion fail to show that the plaintiff is entitled to recover. The complaint upon its face is good. It sets forth a cause

of action upon the written guaranty. That guaranty, by its terms, provided that if the note was not paid at its maturity, the guarantor, upon demand, would pay it to the extent stated therein. The complaint alleges the non-payment of the note at maturity and the fact that demand was made upon the defendant for payment. The answer, however, denies these latter allegations, and the moving papers do not set forth facts to support them.

A demand upon the defendant was essential. No liability on her part arose upon the guaranty until it had been made. The rule is different where the principal debtor agrees to pay on demand. There the obligation is due regardless of demand, and hence an action will lie without a demand having been made. Under an agreement of guaranty, however, such as the one in question, there is no default on the part of the guarantor until demand has been made and payment refused. (*First National Bank* v. *Story*, 200 N. Y. 346.)

Besides, the record shows there was an agreement that there should be no default in payment of the principal of the note until after ten days' written notice had been given; and there is nothing either in the complaint or in the moving papers to show that such a notice had been given. In the absence of such notice there was no default in the payment of the note. This defect does not appear on the fact of the complaint, because the agreement which contains this provision is not a part of it.

The defense, however, is bad. It attempts to plead that the plaintiff is barred from maintaining the action by virtue of the provisions of sections 1077-a and 1077-b of the Civil Practice Act (Laws of 1933, chap. 793). The statute constitutes a part of what is commonly called " The Mortgage Moratorium Laws." Even if this statute could be held to apply to such an action as the present one, the defense pleaded is insufficient. The statute purports to provide that no action shall be maintained upon a guaranty of any obligation secured by a mortgage on real property so long as no action shall be maintainable to foreclose such mortgage. The answer, however, does not set forth facts showing that no action is maintainable to foreclose the mortgages which secure the note, the payment of which was guaranteed by the defendant.

Section 1077-a provides that during the emergency, as defined and limited by the act mentioned, no action shall be brought to foreclose a mortgage solely for, or on account of, a default in the payment of principal or of an installment thereof. In order to make the answer in question sufficient under any conditions, it was necessary, therefore, to set forth facts showing that a foreclosure action could not be maintained. This, the answer does not do.

The plaintiff is not obliged to show the opposite. This matter, if available at all to a defendant, must be pleaded as a defense, and the necessary facts alleged, and the burden of proving them would be upon the defendant.

We feel that leave to serve an amended pleading would be useless because it is our further judgment that upon the undenied facts appearing in this record, the statute in question does not offer any defense.

Section 1077-b provides in part that no action shall be maintainable upon a bond or evidence of indebtedness, " if the indebtedness originated or was originally contracted for simultaneously with such mortgage and is secured solely by such mortgage, or upon any guaranty of payment of the principal or installment of principal of any mortgage within the scope of section ten hundred seventy-seven-a or upon a guaranty of any obligation secured by such mortgage, so long as no action or proceeding shall be maintainable to foreclose such mortgage." Had an action been brought against the maker upon the promissory note guaranteed by the defendant, this section would not offer any defense, because the facts show that the indebtedness did not originate and was not originally contracted for simultaneously with the mortgages which secure the note, and is not secured solely by such mortgages. It is only when these facts are established that an action upon a bond or evidence of indebtedness may be barred. As there would be no defense under the statute to an action against the maker of the note, there can be none thereunder to an action against a person who has guaranteed its payment. While the wording of the statute might suggest the basis of a contrary contention, we think the purpose of the statute as plainly revealed by its title and the heading of its sections, and .by its companion statute (Laws of 1933, chap. 794), shows this to be unfounded.

Chapter 793 is entitled: " An act to amend the civil practice act, in relation to foreclosure of mortgages and actions for judgments on bonds secured by mortgages." After declaring that a serious public emergency exists, it enacts the sections of the Civil Practice Act in question.

Section 1077-a is headed: " Foreclosure for principal defaults suspended," and section 1077-b is headed: " Actions on bonds for principal defaults suspended."

The entire statute throughout refers to mortgages, and the evident intention was to protect the owners of property and those who had executed bonds or other evidences of indebtedness which were secured by mortgages. This is also shown by the companion chapter (Laws of 1933, chap. 794), entitled: " An act to amend

the civil practice act, in relation to deficiency judgments in actions to foreclose mortgages on real property and actions to recover judgments on bonds secured by mortgages on real property." The latter enactment declares, in the same terms as the previous one, that a serious public emergency exists, and it then adds to the Civil Practice Act sections 1083-a and 1083-b. The heading of the first of these two sections is: " Limitation upon deficiency judgments during emergency period." The heading of the other one is: " Judgments in actions on bonds." In both chapters the emergency is declared to continue until July 1, 1934.

Reference to title and headings is proper to ascertain the intent of the Legislature in certain situations. (*People ex rel. Jacobus* v. *Van Wyck*, 157 N. Y. 495, 504; *People ex rel. New York Life Ins. Co.* v. *Walsh*, 198 App. Div. 34; *People* v. *Brainard*, 192 id. 816, 819.)

In view of the evident purpose and intent of the legislation, it is manifest that the provisions of section 1077-b should not be construed so as to provide a defense to a guarantor of an obligation secured by a mortgage on real property when there would be no defense to an action upon that obligation against the one primarily liable thereon.

The Appellate Division, Second Department, on December 29, 1933 (*Klinke* v. *Samuels*, 240 App. Div. 1008)* held that the provisions of sections 1083-a and 1083-b of the Civil Practice Act did not apply to the guaranty of a bond which was secured by a mortgage. While the language of the sections involved in that case is different from that of the sections in the case before us, what the Appellate Division there said, regarding guarantors of obligations secured by mortgages, is pertinent.

All concur; present, CROPSEY, MacCRATE and JOHNSTON, JJ.